## Commonwealth, Appellant, *v.* Mendelsohn et al.

*Principal and surety—Bonds—Judicial bonds—Order of support —Reduction in order—Liability of surety.*

A surety on a bond, given in connection with an order of support, is not relieved of his liability because the court reduces the amount named in the original order.

When a person becomes surety for another in a judicial proceeding there is an implied understanding that it shall be conducted in accordance with the provisions of the law relating thereto. The statutes regulating amendments, as well as other instances of trial, are as much a part of the contract, in the contemplation of the parties thereto, as if they were embodied in the condition of the bond. There is and necessarily must be this distinction between contracts of suretyship in ordinary business affairs, and those connected with judicial proceedings.

The modification of orders in desertion cases, whether the proceedings are under the general law or the Act of 1867, are in the discretion of the court, and the allowance may be increased or diminished from time to time to suit the changed conditions of the

parties. Such an alteration in the allowance will not relieve the surety of his liability on the bond.

Argued April 14, 1924. Appeal, No. 100, Oct. T., 1924, by plaintiff, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1919, No. 2454, in case stated between Commonwealth of Pennsylvania v. Jacob Mendelsohn and Philip Weinstein. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Case stated to determine liability on bond. Before MCMICHAEL, P. J.

The facts are stated in the opinion of the Superior Court.

The court entered judgment in favor of defendant. Plaintiff appealed.

*Error assigned* was the judgment of the court.

*Lemuel B. Schofield,* and with him *Franklin E. Barr,* Assistant District Attorney, and *Samuel P. Rotan,* District Attorney, for appellant.—The reduction in the amount of the order did not relieve the surety: Silverthorn v. Hollister, 87 Pa. 431; Rutty's App., 84 Pa. 61; Foster v. Passerieux, 37 Pa. Superior Ct. 307; Com. to use v. Finn and O'Gara, 27 District Reports 32; Vogel v. Hughes, 2 Miles 379; Shroyer v. Thompson, 262 Pa. 282; State Camp of Penna., etc., v. Kelley, 267 Pa. 49; Citizens Trust and Surety Co. v. Howell, 19 Pa. Superior Ct. 255.

*Samuel W. Salus,* for appellee, cited: Bensinger v. Wren, 100 Pa. 500; Lancaster v. Barrett, 1 Pa. Superior Ct. 9.

OPINION BY GAWTHROP, J., July 2, 1924:

On December 15, 1919, the Municipal Court of Philadelphia County made an order of $10 a week against

Jacob Mendelsohn, one of the defendants, for the support of his wife and child, and he was required to furnish a bond to the Commonwealth in the sum of $500 for compliance with the order. The order was made by authority of the Act of April 13, 1867, P. L. 78, which provides, inter alia, that, it shall be lawful for the court, "after hearing, to order the person against whom complaint has been made, being of sufficient ability, to pay such sum as said court shall think reasonable and proper, for the comfortable support and maintenance of the said wife, or children, or both, not exceeding one hundred dollars per month, and to commit such person to the county prison, there to remain until he comply with such order, or give security, by one, or more sureties, to the Commonwealth, and in such sum as the court shall direct for the compliance therewith." The other defendant, Philip Weinstein, became the surety on the bond. The condition of the bond was as follows: "That, if the above bounden, Jacob Mendelsohn, shall and do well and truly comply with the said order of said court, then the above obligation to be void, otherwise to be and remain in full force and virtue." The bond contained a power of attorney to confess judgment or judgments and to issue execution for such sum or sums as should, by affidavit filed in the proper court, appear to be due by breach of the condition of the obligation. On December 16, 1919, judgment was entered in the sum of $500. On January 18, 1921, the court reduced the order from $10 per week to $8 per week. On April 29, 1921, it being proved to the court that the wife of the defendant, Mendelsohn, had obtained a divorce, the order of $8 per week was reduced to $3 per week for the support of the child alone. The order of $10 per week was fully complied with at the time it was reduced to the sum of $8 per week. On June 2, 1923, there was due and unpaid under the order of $3 per week the sum of $154.55 and execution for that amount was issued on the judgment. Whereupon the defendant, Weinstein, filed his petition to open

the judgment entered against him. After the rule to open was made absolute, the parties joined in a case stated for the opinion of the court in the nature of a special verdict, upon the question whether the reduction of the amount of the original order, without the consent of the surety, relieved him of liability. The learned judge answered the question in the affirmative and entered judgment for the defendant, Weinstein. He cited and followed Bensinger v. Wren, 100 Pa. 500, regarding it as an authority for this rule of law, stated at page 505 of the opinion: "Any alteration of a contract by the principal parties, without the assent of the surety, is fatal to its validity, as against the surety. Even if he sustains no injury by the change, or if it be for his benefit, he has a right to stand upon the very terms of his obligation and is bound no further. Any unauthorized variation in an agreement which a surety has signed, that may prejudice him, or may substitute an agreement different from that which he came into, discharges him." In that case the change in the contract was prejudicial to the surety and the language of the opinion in so far as it related to a change beneficial to the surety was not necessary for the decision of the case and was obiter dictum.

But in our opinion the determination of the question whether a change in a contract is fatal to its validity as against the surety, whose assent has not been obtained, even if it be for his benefit, is not necessary to the decision of this case. There is a well recognized distinction between contracts of suretyship in ordinary business affairs and those connected with judicial proceedings. "The acts of assembly under which official bonds are given and judicial contracts made, enter into and modify such bonds and contracts; and parties must be considered as contracting with a view to what the law prescribes, and as assenting to all the legal consequences of their act": Hocker v. Wood's Executor, 33 Pa. 466, 468. In that case Hocker became the surety on the offi-

cial bond of two persons who were appointed guardians of minor children. The question was, how did the discharge of one of the guardians affect the surety on the bond. The court held that the bond into which Hocker went was a judicial contract prescribed and regulated by public law; that it was conditoned for the discharge of a duty to parties whom the orphans' court had in charge; that one of the powers vested by law in the orphans' court was the power to discharge either of the guardians and leave the duty to be performed by the other; that Hocker knew this because he was bound to know it and consented to be bound on this condition; that when one guardian was discharged by due course of law, there was no violation of Hocker's contract; that it was the same as if he had expressly stipulated that one of the guardians might be discharged.

In Jamieson v. Capron, 95 Pa. 1, the question was, whether the plaintiff in error was discharged from liability as surety on the property bonds given in two actions of replevin, in consequence of amendments made without authority of law, and without his knowledge and consent. The Supreme Court said: "When a person becomes surety for another in a judicial proceeding, there is an implied understanding that it shall be conducted according to the provisions of law relating thereto. The statutes regulating amendments, as well as other incidents of trial, are as much a part of the contract, in the contemplation of the parties thereto, as if they were embodied in the condition of the bond. There is and necessarily must be this distinction between contracts of suretyship in ordinary business affairs, and those connected with judicial proceedings. If the holder of an obligation against two, with a surety for both, releases one of the obligors, he thereby, for obvious reasons, discharges the surety; but, if a person becomes surety for two administrators or guardians, and one of them is discharged by court, without the knowledge or consent of the surety, his liability for the official acts of the remain-

ing administrator or guardian still continues. The reason of this is, that the surety, when he entered into the obligation for both, knew, or must be presumed to have known, that the court had power to discharge one, and thus devolve all the duties of the office on the other, and in view of this he consented to the condition that the court might exercise any authority with which it was invested, without releasing him from liability as surety."

The modification of orders in desertion cases, whether the proceedings are under the general law or the Act of 1867, are in the discretion of the court, and the allowance may be increased or diminished from time to time, to suit the changed circumstances of the parties: Commonwealth v. Jones, 90 Pa. 431. So, in the present case, Weinstein, in becoming surety for Mendelsohn must be considered as having contracted with reference to the power of the court in proceedings under the Act of 1867 and with the view of remaining responsible under his bond if the order made against his principal was reduced.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment for the Commonwealth.