## Commonwealth, to use, v. Sigel et al.

*John W. Mentzer*, district attorney, for plaintiff.
*John P. Sipes*, for defendants.

SHEELY, P. J., April 21, 1938.—This is an action of assumpsit in which the parties, by agreement, have dispensed with trial by jury and submitted the decision of

the case to the court under the provisions of the Act of April 22, 1874, P. L. 109.

The action is based upon a bond entered into by Glenn Sigel and Edward Sigel, dated January 14, 1936, to the Commonwealth of Pennsylvania in the sum of $300 upon condition that Glenn Sigel would well and truly comply with the sentence of the Court of Quarter Sessions of Fulton County to pay the sum of $4 per week for the support of his wife and child. It is alleged that Glenn Sigel has failed to comply with the said order of court, and that there is now due and owing plaintiff the sum of $63. Defendant, Edward Sigel, admits the execution of the bond and the entry of the order of the court of quarter sessions, but alleges that he has paid to Martha Sigel, use-plaintiff, the full sum of $300, and that he is not indebted to plaintiff in any sum whatever.

## Findings of fact

1. On January 14, 1936, the Court of Quarter Sessions of Fulton County, Pa., to no. 3, January session 1936, entered an order directing defendant, Glenn Sigel, to pay unto his wife, Martha Sigel, the sum of $4 per week for the support of herself and her child, the payments to begin on January 14, 1936.

2. On the same date Glenn Sigel and Edward Sigel executed a bond to the Commonwealth in the sum of $300 conditioned upon compliance with the said sentence and order by Glenn Sigel.

3. On November 27, 1936, Glenn Sigel presented a petition to the court alleging that he was unable to pay the support order of $4 per week by reason of a change in his occupation, and praying the court to modify said order, upon which petition the support order was reduced to $3 per week beginning November 27, 1936.

4. All payments on account of said support order were made to Martha Sigel by check of Edward Sigel, and to date a total of $304 has been paid thereon.

5. No payments on account of said support order were made to Martha Sigel by Glenn Sigel directly.

6. Payments on account of said support order are now in arrears, and on March 23, 1938, the date of the trial of this matter, there was due and unpaid the sum of $63 from November 3, 1937.

7. No agreement was made and no understanding existed between Martha Sigel and Edward Sigel concerning the payments on account of the support order, and no breach of the conditions of the bond had been asserted prior to the entry of this suit.

## *Discussion*

We have made no finding of fact as to the source of the money paid to Martha Sigel by check of Edward Sigel. There is nothing of record to show that the money thus paid was the money of Edward Sigel, and not money given to him by Glenn Sigel for that purpose. In our view of the situation it is immaterial whether such payments were made by Edward Sigel from his own money or whether made from money paid to him by Glenn Sigel. For the purpose of this discussion we shall assume that such payments were made by Edward Sigel from his own funds.

Defendant Edward Sigel's theory that payment by him to Martha Sigel of more than the amount of the bond discharges him from further liability is based upon the assumption that he was liable for the weekly payments due her. The difficulty with this position is that Edward Sigel did not enter into a contract which required him to make weekly payments to Martha Sigel. All he agreed to do was to be liable for the penalty of the bond in case Glenn Sigel, or some volunteer in his behalf, did not make the payments required by the order of court: Foster v. Passerieux, 37 Pa. Superior Ct. 307 (1908). So long as Glenn Sigel, or anyone for him, complied with the order there could be no breach of the condition and the bond

was a continuing security for the payment of the order. Until there was a breach of the condition, payments made on the order, by whomsoever made, could not be credited on the penalty of the bond in discharge of the liability of the surety: Commonwealth v. Grady et al., 95 Pa. Superior Ct. 108, 113 (1928). The nature of the bond and the effect of payments made by a surety before forfeiture of the bond is clearly stated in Commonwealth, to use, v. Fawner et al., 96 Pa. Superior Ct. 606, 608 (1929) :

"Under the terms of the bond, Fawner's [Glenn's] undertaking was to make the payments as directed in the order and Young [Edward] bound himself to be liable for the penalty in case Fawner [Glenn] did not pay in accordance with the order; the payments made by Young [Edward] (no breach having been asserted) were not in discharge, pro tanto, of his obligation under the bond but as a volunteer for Fawner [Glenn]".

A bond of this type is different from the ordinary surety bond. It is not discharged by bankruptcy of the surety because it is not a fixed liability absolutely owing. The surety is conditionally bound and the obligation does not become enforcible against him until the bond or recognizance is forfeited because of the failure of the principal to make the payments as ordered by the court. Until such forfeiture there is no obligation enforcible against the surety: Commonwealth ex rel. v. Hosey et al., 101 Pa. Superior Ct. 142, 148 (1931).

The reduction of the support order on November 27, 1936, did not affect the liability of the surety in any way since the original bond was permitted to stand and no change was made in the method by which compliance should be secured: Commonwealth v. Mendelsohn et al., 83 Pa. Superior Ct. 593 (1924) ; Commonwealth, to use, v. Fawner et al., supra. Nor did the demand for payment sent by Martha Sigel have any effect upon the situation even though such notice might have been sent to Edward Sigel: Commonwealth, to use, v. Redrick et al.,

113 Pa. Superior Ct. 391 (1934). However, when the Commonwealth undertakes to enforce its rights under the bond by reason of a breach of the condition by the principal, a new situation arises with respect to the duty and rights of the surety. Payments thereafter made by the surety are legally applicable to the discharge of his liability as surety: Commonwealth v. Grady et al., supra; Commonwealth, to use, v. Redrick et al., supra.

Under these authorities, which are binding upon us, it follows that the payments made by Edward Sigel on account of the support order, even if made from his own funds, cannot be credited upon his liability on the bond. The payments being in arrears and the Commonwealth having proceeded to declare a default, judgment must be entered against the surety for the amount of such bond.

Under the authorities it seems that judgment must be entered for the penal sum named in the bond and the amount presently due the use-plaintiff liquidated and ascertained: Commonwealth v. Delong, 33 Lanc. L. R. 228; Commonwealth v. Seiders et al., 1 Dist. R. 264; Commonwealth, to use, v. Ruff (No. 1), 3 Dist. R. 561.

### Conclusions of law

1. Payments made by Edward Sigel on account of the weekly payments due by Glenn Sigel, upon whose compliance bond he was surety, cannot be credited upon his liability on the bond, but were made by him as a volunteer for Glenn Sigel.

2. Payments on account of the support order being in arrears, the recognizance entered into by Edward Sigel is forfeited and he is liable to the use-plaintiff for the amount of payments now in arrears.

3. Judgment must be entered against Edward Sigel in the sum of $300, and the amount due Martha Sigel, use-plaintiff, liquidated in the sum of $63.

And now, April 21, 1938, upon consideration of the foregoing case, it is ordered and decreed that judgment be entered in favor of the Commonwealth of Pennsyl-

vania for the use of Martha Sigel and against Edward Sigel in the sum of $300, and that the amount due Martha Sigel be liquidated as $63, unless exceptions are filed to the findings of facts and conclusions of law herein contained within 30 days after notice of the filing of this decision is given to the parties or their attorneys of record.